The argument this morning is Hildebrand v. Allegheny County in the Allegheny County District Attorney's Office. The panel has agreed to permit counsel to argue from afar by video using video equipment, I believe, in Brother Fisher's chambers in Pittsburgh. And so we will hear from counsel in the Hildebrand matter first from Ms. Crisp. Thank you, Your Honor. Can you hear me? We can hear you, but if you could speak up a little bit, I think that might be helpful. Certainly. May it please the Court, my name is Marjorie Crisp, and I represent the appellant, Anthony Hildebrand, on this appeal. I have reserved three minutes of time for rebuttal. This appeal concerns the dismissal of the case by the trial court pursuant to Rule 41B. This court has established six factors to be considered in evaluating a case for dismissal under 41B, set forth in Pullis v. State Farm. Of those six factors, the trial court did not find that Factor 4, which is bad faith or willful misconduct, applied. And if I may, instead of going through the five remaining factors, which I have briefed one by one, I'd like to zero in on what I think are two main issues of concern in this case. One, separating out Factor 2, which is the question of prejudice that is being raised as a result of the death of one of the witnesses. And the other issue is the existence of a non-adjudicated motion to dismiss by the trial court and its impact on the other remaining factors. I'd like to hear from you, particularly with respect to that pending motion. That motion remained pending after the case went back to the district court, from our court, among other things, within the context of the first Pullis factor. But certainly proceed with your argument as you've just set forth. Absolutely, Your Honor. The Pullis case and 41B motions, in an overriding basis, strive to ensure that a litigant, rather than having his case dismissed as equaled under 41B, that the litigant has his case determined on a substantive basis. On the merits, and interestingly, the district court, in his opinion, did not, as I recall, even reference that principle. He certainly didn't set it out paramount to concerns prior to kicking off the various Pullis factors. Am I correct? Yes, that's correct, Your Honor. When it comes to the sixth factor, meritoriousness, what the trial court determined was that Appellant did not provide, in his mind, sufficient reasoning for the delay. And that therefore, because sufficient reasoning for the delay was not provided, that there was no ability for him to measure the merits to the delay, not the case. When the standard for that particular factor is that the court looks at the pleadings as they are and determines, has plaintiff raised a prima facie case? And then, has the defendant raised a prima facie defense? Well, what comes through loud and clear in Judge Schwab's opinion is his belief that you were probably, as I read it, more to the point, your client, had not agitated, if you will, pushed to move this matter along. I mean, that pretty much leaps off the page. So, starting as we have with the principle that, as a matter of legal policy, we prefer to resolve disputes on the merits rather than by way of dismissal. What can you tell us about the condition of this case on the docket, upon its return from this court, and what you or your client did or did not do to move the matter along? Certainly, Your Honor, the procedural posture of the case upon return, we really have to look at the stay that was put into place while it was on appeal. The stay that was put in place was put in place explicitly to be lifted upon conclusion of the prior appellate proceedings. The motion to dismiss the ADA claim was fully briefed concurrently to that motion to stay. We had filed our response in opposition, and we had filed our brief. In terms of the return, the mandate returned, and we simply at first believed that the... Well, when did the mandate return? Did the mandate return upon our court's decision, or did the mandate return upon denial of the writ of certiorari? Upon denial of the writ of certiorari, and so that was, I believe, February 2014. And you received notice of that, did you not? We received notice, yes, that the mandate had been returned. At that point, we believed in an inadvertent error of belief that that would administratively reopen the case, and that... Is that correct? It did. It did, but we did not notice that until a certain amount of time had passed. We were not aware of that. We believed that the case was reopened and that the stay was automatically lifted. Why was there a stay while it was on appeal? The district court wouldn't have any jurisdiction while it was on appeal. But what was the purpose of the stay pending resolution of the appeal? What was the... Excuse me, Your Honor, what was the... The purpose of a stay pending resolution of appeal, the district court wouldn't have any jurisdiction once the notice of appeal was filed. That's correct. That's correct. And so I think part of the confusion in this case arose because I had filed concurrently with the motion to stay our response in opposition and our brief in opposition to defendants' ADEA motion to dismiss. And so I think one of the errors was by pre-briefing and the motion to dismiss that was stayed, nothing triggered the court upon return from appellate jurisdiction. If I had not pre-briefed the motion to dismiss on the ADEA claims when the mandate was returned, I would have then filed what I had previously filed. And I do think that that may have led to the confusion, may have led to the case not being triggered for adjudication of the motion to dismiss on the ADEA claim. The court had all the papers necessary to resolve the dispositive motion, did it not? Yes, it did. The problem appears to be that the court may not have known that or may not have had it brought to his attention that this motion was right for disposition. That is clearly a possibility, Your Honor. But when we look at the factors to consider a dismissal under 41B, it is our position when we look at all of the other factors that what the district court didn't do. But let's not look at all the other factors, let's just look at that factor number one, because even if we assume that the court did not know or that this matter was not brought to the district court's attention, the opinion makes clear that the court is putting the onus upon you or upon your client to move this matter along, to take action. That is to say that the district court had no responsibility to, as he used the term, reignite the matter. That is the correct reading of what the district court determined. And if I may address... Do you think there was shared responsibility there? Well, I don't... That's a softball. Just answer yes or no. Don't let that go by without taking a swing at it. Well, the fact of the matter is that Appellee and the district court seem to believe that I am arguing that they, that I'm arguing that the law says that they bear the responsibility. The truth of the matter is that I have never argued that it was not plaintiff's responsibility to move the case along. However, this case does present a procedural situation and factual situation that are unusual and that while it is not the court or the defendant's responsibility to move the case along, we had felt that the case, that we had done everything procedurally in terms of having all the paperwork in to determine the pending motion. All right. Let's jump ahead then to factor... I'm still not sure I understand now. I understand what you said here. But let me just ask you this question. You filed this stay motion. Well, I don't know when you filed it, but there was an order of court entered on July 29th, 2014 by Judge Schwab in the district court case, saying that all merits of the case shall be stayed until the court obtains jurisdiction back from the appellate court. All right. That's the stay order. Okay. Did that get filed? Yes. And it got filed on the record in the district court? Yes, it is. It is part of the record on the district court that the stay was limited until the conclusion of appellate proceedings. And obviously the notice of appeal was on the record in the district court. That's correct. And that was on the record actually before the stay order was filed. Yes, that's correct. Was there anything else on record in the district court after that stay order? No, other than the mandate, when the mandate returned. When the mandate returned. Okay. Yes. And what should have happened at that point? Don't tell me who's responsibility. What should have happened next? Well, what should have happened in my opinion is that the mandate should have lifted the administrative appeal or the administrative closing of the case and that the adjudication of the pending and fully briefed motion to dismiss the ADE claim should have happened. And the error on our part was as time was progressing that we did not reach out to the court and say, what's going on? You're obviously familiar with the CMECF system. When that mandate came back, everybody who was involved in that case would have gotten an email notice, correct? Yes. Okay. Including the district court judge? I have no information, but I don't want to assume, but I would think so. I just wanted to clarify the picture. What the district court may not have received, however, after the return of the case to the Western District's docket is the quarterly report, I think it's quarterly, that has been required since the so-called Biden bill of the early 90s, indicating an inventory of pending motions and how long they've been pending. That may not have come to his attention periodically so long as this case remained on the docket as a closed case. Did it remain on the docket as a closed case? The docket remained closed, and we later determined that, yes. You've used up at this point all of your time in a little fuss, but let me ask you about the second factor, which seems to be, there's some tension in the district judge's discussion of this, because he does, I think, he does clearly weigh it against you, that is in favor of dismissal, while at the same time, in maybe the same paragraph, also states that the prejudice here could cut both ways by virtue of the death of witness Ealing. What was the impact here, the death of Ealing, and to what extent might that have been compensated for by both parties through any testimony or evidence derived from Botsford or Logan? I appreciate the question and the extra time to answer the question. This case is not one of a singular agitating supervisor slash witness to the employee. The case pleads that the actions faced by appellant were from a pervasive, well-known, openly discussed age discrimination plan. If you review paragraph 12 and its subparts of the amended complaint, there are numerous allegations where Logan and Botsford played a more critical role than Ealing, and where Logan in particular was Ealing's direct supervisor, where Logan either worked in concert with Ealing and or directed Ealing. If I could summarize, you could, your submission is you could still make out a case of discrimination without Ealing's testimony or testimony involving Ealing, that's what you're saying? Yes, absolutely, and paragraph 12, a thorough look at it shows the other witnesses that were involved directly, not secondhand, were involved directly with the actions taken against Mr. Hildebrand. And you are also suggesting that Ealing's testimony was not essential for the defense to be able to put forward a defense to your case. Are we correct? Yes, that's absolutely correct. Well, since you have reserved time for rebuttal, we'll have you back at that time. Thank you, Your Honors.  Good morning, Your Honors. May it please the court, Charles Porter from the law firm of Brooker and Porter, formerly Brooker, Schneider and Porter, on behalf of the District Attorney's Office of Allegheny County. Your Honor, I think this case really turns on the standard of review, which is abuse of discretion. It's a very high standard. It's not necessarily how any of your honors may necessarily have decided this case, but essentially it's whether he, being Judge Schwab, abused the discretion, unless there's a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon weighing of the relevant factors. What about the court's failure to consider the importance of resolving it on the merits? Well, number one, POLIS doesn't require all six factors to be present, number one. Number two, I think what's interesting... What is the most important of the six? Well, I think it's, in this particular case, I think it is, number one, the delay, and number two, the prejudice suffered by the defense. And I think each of those factors, as listed in the cases that have reviewed this area, prejudice has been looked at as a very, very significant and probably an overriding factor. All right, but let's set aside the question of prejudice and look at this case as it stands, which is that there was an imposition of a sanction. In fact, it was, quote, the death penalty sanction for the plaintiff. What is there in the record, what is there in the district court's opinion, to suggest that he gave any meaningful consideration to the fifth POLIS factor, which is looking to alternative sanctions, especially against the backdrop of our disfavoring dismissal on the merits and viewing it as a final, if not extreme, resolution? Well, in terms of alternative sanctions, I believe the judge did address it, and I think, quite frankly, there are no other sanctions that, in a case like this, really make any sense. If you look at what's been pled here, the plaintiff, Mr. Hildebrand, in his brief, essentially, or in his complaint, says that Ewing was directly involved in many, if not most, of the pre-termination negative employment actions taken against Hildebrand. And if you review the complaint, there are 26 allegations by my count that only reference interaction between Hildebrand and Ewing. But there is no discussion by the district court as to, even granting the importance of Ewing's conduct, how the case might have proceeded based upon evidence from and about Botsford and Logan, is there? Well, there's really not. But I think, again, that's because if you look at the complaint as it's been pled, the plaintiff, Mr. Hildebrand here, essentially signaled out Mr. Ewing as his main antagonist. There can really be no question that that's what the complaint does. There are certainly references to Botsford and Logan and another man, Bonacchi. But the reality is almost all the main allegations involve Hildebrand and Ewing in a one-on-one type situation. And when they wait to the point of doing anything until Ewing has died, it really prejudices us in terms of, A, preparing for trial. Wait, are you saying they intentionally waited until the witness died? Oh, no, no, absolutely not, Your Honor. It sounded like you were saying that. No, what I'm saying is this case, they asked for the stay. The case comes back. Forget the stay. What difference does the stay make? Once the notice of appeal is filed, there's no jurisdiction. The stay is a red herring. Well, once the case comes back, once the mandate is returned and the district court now has jurisdiction, according to plaintiff, they thought that the court would do something. But who in their right mind, if you have a good case, if you have a case that you think has lots of merit, are you going to wait three years to do anything in this case? Mr. Porter, I guess the question there would be, it was your motion that was pending before the court. Right. Correct? Your motion to dismiss was pending before the court when the case came back. That's correct. It seems to me that your argument is, and what Judge Schwab found, was with that stature of the case, that the plaintiff should have been the one making the inquiry. Why didn't you make an inquiry? Well, we represent a government entity. We are the defendant. We are not looking to spend government monies if we don't have to. We filed a motion to dismiss. And eventually that's what you did. That's what we did, Your Honor. That's what you did, but the action you took, the argument has been that they didn't do anything. You inferred, and I think maybe you didn't intend to infer this, but you inferred they waited until Eling died. In fact, what happened was it was you that then made the motion to dismiss when Eling died. It wasn't that they were trying to take advantage of a strategic situation. Isn't that accurate? I didn't intend to infer that, and I apologize if I did. What happened here, my partner, Mr. Schneider, was preparing to retire. He was reviewing files, recognized this, learned that Detective Eling had died, and then he filed the motion to dismiss that ultimately resolved this case. Had he not filed the motion, I question whether anything would have still happened with this case. And what's interesting, to go back to the merits of the case type argument, plaintiff's counsel puts in one of her pleadings here that she was in no position as attorney for plaintiff to urge the court to decide upon that motion, particularly if the court decides to dismiss her client's one remaining count. So it seems to me she's saying, why would I ask the court to take action when he might dismiss my case? It doesn't sound like she thought she had a good case, because if she did, she would have pushed forward and said, we have a case that's been sitting here for three years. If you have a case that's sitting here for three years, that sort of suggests – I'm a plaintiff, and I have a good case. I'm not going to be sitting on my heels for three years doing nothing. The fact of the matter is, this did nothing. Isn't this merely an error by the clerk's office? It's not. It's not just an error by the clerk's office, because plaintiff knew that the case had been returned. Plaintiff did nothing for three years. And the judge knew the case had been returned. I'm sorry? And the judge knew the case had been returned. We assume. Well, we can assume that the judge knew, but again, we also know this, and I think the court can certainly take notice that Judge Schwab is not somebody who sits on his hands. He likes to move cases rapidly. He likes to not let cases sit around. And I think he even put in his opinion that the court recognized that he moves things expeditiously. That's why I said, isn't this a clerical error? I mean, I think from the record, it's unlikely that Judge Schwab did know that the case was returned. If Judge Schwab knew that this case had been returned, I think he certainly would have scheduled something very quickly. Exactly. I would agree with that. That's what my question goes back to. Doesn't this boil down to clerical error? And I would say respectfully, it does not. Certainly, I think there is the potential for a clerical error in the sense of not notifying Judge Schwab. But plaintiff knows. They know that the case is sitting there. They know that the mandate's been returned, and they do nothing. And when we learned that Detective Ewing had died when my partner was preparing to retire, then he filed a motion. And it's well-grinded in the law. I mean, the cases talk about prejudice. I think there can almost be no question in my mind that there's significant prejudice to the defense here. We've lost our main witness. We've lost the ability to have him help us prepare an answer to the complaint. We've lost the ability to have him corroborate other witnesses. Your Honor mentioned about Ms. Botsford and Detective Logan or Mr. Logan. And in my mind, they are not – they are certainly – and Botsford is more a paperwork, for lack of a better term. Logan's involvement was – anything with Logan was involving certain aspects of Ewing, pretty much. And Ewing's not here to corroborate him. Ewing's not here to corroborate Botsford. Ewing's not here to corroborate anybody, quite frankly. So we've lost Ewing in terms of the main witness. We've lost in terms of his ability to corroborate other witnesses. And as Judge Schwab pointed out in his opinion, discrimination cases like this generally turn on a he said, she said type deal. Where Hildebrand's going to say A, we no longer have Ewing to say B or to explain the circumstances that Hildebrand believes somehow show age discrimination. And the fact that the plaintiff took no action upon learning that the case had been remanded to ask the court to do something with the case, in my mind, is on them. They have the ability – they have the obligation to move the case. The court doesn't have the obligation to move the case. The defense doesn't have the obligation to move the case. Oh, I beg to differ with you. I can look back over decades and tell you that all kinds of people tell district judges they have the obligation to move cases. So that is not an accurate characterization. Let me ask you about the history of dilatory disfactor because the district court at one point observes in his opinion that there is no evidence of dilatory tactics. Yet at the same time and on the same page, he holds plaintiff entirely responsible for what he characterizes as an unquestionably lengthy span of time. Do you see some, if not inconsistency, some tension there in those two statements? I think it comes back to the language of the Adams case, Your Honor, where in the Adams case they talked about whether delay was dilatory. And I don't think anybody is suggesting here that the plaintiff engaged in any type of gamesmanship that would constitute dilatoriness in that sense of the meaning of that term. However, the Adams case basically says that length alone, length of the delay alone can't constitute dilatoriness. And I believe that's what Judge Schwab was referencing here. The length of this delay in and of itself under the rationale and the language of Adams can't constitute dilatoriness. I don't disagree with that. That is what Adams said. We've also said in Briscoe versus Klaus that conduct that occurs one or two times is insufficient to demonstrate a history of dilatory. So this record is what it is. You don't you maintain that there's a history of dilatoriness here? I only maintain that the length alone can constitute dilatoriness. I don't think I would not ever say that plaintiff did anything else that would constitute dilatoriness. I would suggest their failure to act for over three years under the rationale of Adams and the definition of dilatoriness in Adams can the length. If the court's accepting that length alone can be dilatoriness, then the length alone here would be the dilatoriness in this case. There's no other conduct in this case quite candidly. Mr. Porter, is there anything on the record that would support the notion that the plaintiff was personally responsible for the delay? Hilderbrand himself, Your Honor. Yes. There is nothing of record other than the fact of who Mr. Hilderbrand is. There is the observation of Judge Schwab that, after all, Mr. Hilderbrand was unemployed at the time, so he had plenty of opportunity to act on this himself. I believe that was essentially the court's observation. Was it not, Mr. Porter? I believe he said something along those lines, yes, sir. I would suggest that Hilderbrand's a 20-plus year law enforcement officer who, in my experience, and I've dealt with Mr. Hilderbrand both when I was a prosecutor and as a defense lawyer over the years, he knew how the court system worked. He is not someone who is a neophyte to the court system. Again, Your Honor, if you think about it logically, if I am a plaintiff and I have a case sitting for three years, the cases come back from the appellate courts and three years have elapsed, it's inconceivable to me that Mr. Hilderbrand would not have been asking his attorney, what's going on with my case? Why isn't there any action? What's happening? Let's go back to the fact that we have the ultimate sanction, dismissal, not on the merits, but dismissal with prejudice as a sanction, and we have that sixth coolest factor that looks to the meritoriousness of the claim or defense. Where, in the opinion, can you find Judge Schwab speaking to the merit of, or even lack thereof, of the remaining claim upon remand, which was the ADA claim? He did not address that. His recitation of the sixth factor, I think, was consistent with what Ms. Christ argued or advised the court, which he essentially looked at the failure of the plaintiff to give any explanation. But that has nothing to do with the legal merits of the claim, does it? It does not. All right. It does not. But again, the polis doesn't require each and every factor to be there. That's a pretty important one, though, is it not? If, as we discussed early on in the argument, that as a matter of legal policy, we disfavor dismissal on the merits rather than having the merits resolved by an ultimate finder of fact. Right? I mean, that places it in – if it doesn't make it the primary concern, it certainly makes it an important factor under polis. I would certainly agree it's an important factor. And the only thing in this record – and again, I referenced earlier Ms. Christ's statement in one of her pleadings as to why would I bring it to the court's attention if I thought he was going to throw it out. To me, if you think the judge is going to throw it out, you don't think you have a very good case. The other thing I think references that or infers that, if you will, is if you think you have a really good case where you have a pot of gold at the end of the rainbow, why are you waiting three years to ask the court – and they still didn't ask the court to do anything. We asked the court to act. So if they thought they had a good case, why wouldn't they be acting? Why wouldn't they be moving the case forward? Why wouldn't they be doing something to get this moving forward? The fact the judge didn't address it, in my mind, is because he found that there was such enormous prejudice here based on the death of the absolutely key witness for the defense. All right. Thank you very much, Mr. Porter. And we'll have Ms. Christ back on rebuttal. Thank you, Your Honor. Ms. Christ, let me ask you a question. Doesn't the weight of this prejudice factor here overwhelm the other polis factors, whether they were weighed properly or not weighed properly? No, I don't believe it does because Ealing was not depicted in the affirmance of the amended complaint as the sole and only agitator and the sole key witness available to the defendant. There are other main witnesses that are as intimately involved in the actions taken against Mr. Hildebrand as well as taken against other older employees. There's Logan. You knew this case was back from the appellate courts. And whether Mr. Porter's characterization of your inactivity is accurate or not, you still decided not to make an inquiry from the court. In a way, didn't you sort of take the risk in waiting this long? If somebody became unavailable, the defense's case would be damaged? No, absolutely not. There was no self-serving strategy. We did believe for a time that the case was returned and the motion to dismiss was going to be adjudicated. We had no reason to believe anything else. To say that the sixth factor that I had some belief that we didn't have a good case and so we just sat on is really absurd. And it is not the standard for meritoriousness. Waiting and thinking that we don't have a good case, it begs logic. That depiction of what occurred is not what occurred. It clearly was an error on our part as the time went on not to contact the court and resolve the error that the court had not reopened the case. Getting back to the prejudice issue, which is a death of any witness is an important factor to consider. In looking at the allegations set forth in paragraph 12 and all of its subparts, you will see that there are multiple key witnesses in this case and also documentation. This is a case that involves the filing of grievances, emails, reimbursement documentation, reports on the performance of Hildebrand that Logan was involved in. Boxford basically had the human resources. To what extent are you prejudiced by Eling's death? Eling's death is only looked at in terms of purchasing the defense. But if the case went back with the sanction of restricting testimony to carve out Eling's part of the case, to what extent, if at all, would that prejudice you? Well, to have a preclusion of issues or facts and evidence related to Eling, there would be some prejudice. Is that part of the Poulos analysis? I don't believe a prejudice towards my client is part of the Poulos analysis. What if it's viewed in terms of the effectiveness of alternative sanctions? You look at it that way. Yes, I think that the use of preclusive motions and evidentiary decisions that are favorable to the defendant would be deemed an appropriate alternative sanction due to the delay and the death of Eling. Once again, what we do have is the plain and explicit language of the district court in his opinion, which includes a statement that the prejudicial effect of Eling's death cuts both ways, affects both sides. And we would therefore, as a reviewing court, be permitted to look to that language as we go about not weighing as the district court weighed, but reviewing how the district court weighed the factors, correct? Yes, I believe that is correct. Thank you very much. We appreciate counsel's appearance before us by video. It's not always easy. It's not as easy as it is when people appear live, but it's easier for you not to have to make the trek from Pittsburgh. Thank you very much, counsel.